UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-14015-CR-GRAHAM/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANDRE JAMAAL WILLIAMS,

    Defendant.

_____/

FILED by _____ D.C.

AUG 18 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON FINAL HEARING IN RESPECT OT THE PETITION ALLEGING VIOLATIONS OF SUPERVISED RELEASE

THIS CAUSE having come on to be heard for a final hearing on July 27, 2017 in respect to the pending Petition Alleging Violations of Supervised Release [D.E. 168], and this Court having received testimony, evidence, and arguments of counsel, recommends to the District Court as follows:

1. Defendant is charged by a Petition with the following violations of supervised release:

| | |
|---|---|
| **Violation Number 1** | **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about April 21, 2017, in Martin County, Florida, the defendant did commit the offenses of possession of a controlled substance in violation of Florida Statute 893.12(6a), possession of cannabis less than 20 grams in violation of Florida Statute 893.13(6b), and possession of drug paraphernalia in violation of Florida Statute 893.147. |
| **Violation Number 2** | **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about May 16, 2017, in St. Lucie County, Florida, the defendant did commit the offenses of |

1

> Count 1: Possession of weapon or ammunition by convicted United States Felon, in violation of Florida Statute 790.23.1C;
>
> Count 2: Possession of cannabis with intent to sell, deliver, or manufacture, within 1000 feet of a place of worship, in violation of Florida Statute 893.12.1E2;
>
> Count 3: Possession of more than 20 grams of cannabis, in violation of Florida Statute 893.126A;
>
> Count 4: Possession of synthetic narcotic, opium or derivative, with intent to sell, deliver, manufacture, within 1000 feet of a place of worship, in violation of Florida Statute 893.13.1E1;
>
> Count 5: Use or possession of drug paraphernalia, in violation of Florida Statute 893.147.1; and
>
> Count 6: Possession of new drugs or legend drugs without a valid prescription, in violation of Florida Statute 499.03.1.

**Violation Number 3** — **Violation of Mandatory Condition**, by failing to refrain from violation of the law. According to Criminal Complaint No. 17-058-FJL, Southern District of Florida, on or about May 17, 2017, in St. Lucie County, Florida, the defendant did commit the offense of felon in possession of firearms and ammunition, in violation of Federal Statute 18 U.S.C. § 922(g)(1).

2. At the start of the final hearing, the government indicated its intent to incorporate the testimony from the detention and probable cause hearing held in this matter on July 13, 2017. Defense counsel had no objection. As a result, the following recitation of facts is taken from both hearings held in this matter.

3. The first witness called by the government was Martin County Sheriff's Office (MCSO) Detective Michael McCarthy. Det. McCarthy has been in the Special Investigations and Narcotics Crimes Section of MCSO for one year. He has been involved in over 100 marijuana arrests. Det. McCarthy testified that at approximately 5:21am on April 21, 2017 he

responded to a reckless driving complaint. The complainant advised him that a white Dodge pickup truck was weaving across the roadway and came to a stop in a turning lane of Northeast Federal Highway. Det. McCarthy went to the location and saw Defendant's vehicle running with the right turn signal and brake lights on, and Defendant sleeping in the driver's seat. Det. McCarthy approached the truck and instructed Defendant to get out of the vehicle. After Defendant exited the truck, Det. McCarthy saw marijuana "shake" on the floorboard.[1] Det. McCarthy then searched the truck and found a backpack on the front passenger seat. Inside the backpack, Det. McCarthy found a pair of men's basketball shorts and sneakers. Inside the backpack's front pocket, Det. McCarthy found five pills, a black digital scale with marijuana residue on it, and a small amount of additional marijuana shake. The pills were confirmed to be hydromorphone, and the substance in the front pocket tested positive for marijuana.

4. During Det. McCarthy's testimony, the government offered Exhibits 1 and 2 into evidence. Exhibit 1 is a sealed plastic bag containing a black digital Judge-brand scale. Exhibit 2 is a sealed plastic bag containing marijuana and five white pills. Det. McCarthy testified that Exhibits 1 and 2 were taken from the backpack located on the passenger's seat of Defendant's vehicle on April 21st. The marijuana in Exhibit 2 was residue collected from the backpack's front pocket. There was not enough marijuana on the floorboard to collect and preserve it, but what was there was field tested at the scene and came back positive as marijuana.

5. On cross examination, Detective McCarthy testified that he did not seize the backpack; rather, he left it and the clothes it contained inside Defendant's truck. Det. McCarthy also testified that he did not ask Defendant about the backpack on the 21st. He did, however, ask

---

[1] The term "shake" is used to describe small pieces of cannabis flower that break off the larger buds, generally as the result of regular handling.

Defendant if he had a prescription for the pills, to which Defendant responded no. Defendant also claimed the shake on the floorboard was incense, although it tested positive for cannabis.

6. On re-direct examination by the government, Det. McCarthy stated that he found a container with a green substance inside the driver's side door of Defendant's vehicle. Defendant told Det. McCarthy that this was an herbal product he burned as incense. Det. McCarthy said the substance did not look or smell like marijuana, and did not test positive for cannabis.

----------------

7. The next witness called by the government was United States Probation Officer (USPO) Beau McGee. USPO McGee testified that on May 16, 2017 federal probation officers conducted a search of Defendant's residence, where Defendant lives with his fiancé and her two children. While searching the master bedroom, probation officers found a loaded Taurus .380 handgun (Firearm #1) under the mattress between the mattress and box spring; a magazine containing ammunition and a clear plastic baggie containing two pills in a nightstand on the left side of the bed; and a clear plastic baggie containing two ecstasy tablets. USPO McGee believed two of the pills were sleeping aids, but he was unsure if they required a prescription.

8. The government introduced Exhibits 3, 4 and 5 through USPO McGee. Exhibit 3 is a picture of the mattress and box spring in the master bedroom. The mattress is covered by a gray sheet and the box spring is covered by a white sheet. Exhibit 4 shows the firearm as it was found on the box spring. Exhibit 5 is a firearm case under the bed. From the perspective of facing the head of the bed, the case was on the left side of the bed. USPO McGee testified that the gun case contained ammunition and gun lube, though only the ammunition is depicted in Exhibit 5.

9. On cross examination, USPO McGee testified that when he arrived at the residence that morning, other probation officers and officers from Port St. Lucie Police Department (PSLPD) were present. The PSLPD officers did not participate in the initial search conducted by probation; they were present as security only. Once the probation officers discovered the firearm and pills in the master bedroom, however, PSLPD officers obtained a state search warrant authorizing them to search. USPO McGee left when the local police began their search.

---------------

10. The government's next witness was PSLPD Detective John Dellacroce. Det. Dellacroce has been an officer with PSLPD since 2013, and a narcotics detective since 2015. He has handled approximately 100 narcotics cases, and has attended various courses including DEA cannabis school, online schools and the Police Academy. Prior to becoming a detective, he was a road patrol officer. Det. Dellacroce testified that the United States Probation Office contacted PSLPD on May 16th to provide security for a search of a probationer's residence. Initially, the probation officers conducted the search while Det. Dellacroce and other PSLPD officers stood in the vicinity as security. After probation officers found Firearm #1, however, Probation discontinued their search and Det. Dellacroce obtained a state search warrant authorizing PSLPD to search the residence. Pursuant to the warrant, PSLPD officers searched and found a second handgun (Firearm #2), multiple rounds of ammunition, marijuana in a Tupperware container, and various pills testing positive for MDMA and MDPA.

11. Det. Dellacroce testified that Firearm #2 was a black .380 caliber Jiminez Arms handgun found in the master bedroom closet. Government Exhibit 10 shows the master bedroom closet where the firearm was found lying on top of a size 12 shoe box beneath men's jeans.

Government Exhibit 11 is a close up of the firearm, and Government Exhibit 12 is the firearm with the magazine and ammunition removed.

12. Police also discovered 120 grams of marijuana in a Tupperware bowl beneath the counter in the master bathroom. Det. Dellacroce testified based on his training and experience that 120 grams is an amount for sale, not personal use. Det. Dellacroce said that a personal use amount would probably be a couple of grams, not 120 grams. Exhibit 8 shows the Tupperware container with the marijuana inside. Exhibit 9 shows each marijuana bag laid out. Det. Dellacroce also testified that Defendant lives within 750 feet of a church.

13. Inside Defendant's garage, law enforcement found another Judge-brand black digital scale and plastic baggies. The scale had residue on it that tested positive for marijuana. Det. Dellacroce testified that scales of this type are typically used to weigh and measure drugs, and baggies of this type are typically used for packaging drugs. Government Exhibit 13 depicts the digital scale. Exhibits 15, 16 and 17 depict a black bucket containing numerous plastic baggies also found in the garage.

14. PSLPD officers also found a magazine, ammunition, and various pills in a dresser drawer on the left side of the master bedroom. Government Exhibit 18 shows the inside of a drawer containing money in plastic bags, what appears to be jewelry (possibly a watch or bracelet), and two small pills (depicted on the bottom right hand side of the photo). Government Exhibit 19 shows a close up of the two pills, which Det. Dellacroce testified are Ecstasy pills. Government Exhibit 20 and 21 shows another drawer containing various items. At the bottom left of the picture in the corner of the drawer is a pill, which field tested positive as MDMA. Government's Exhibits 24 and 25 depict an orange Nike shoe box containing numerous plastic baggies found in the same master bedroom as the firearm, ammunition and pills. More pills were

found in the master bathroom closet shown in Exhibit 22. Exhibit 23 is a close up of a yellow bag containing pills in the bathroom closet. The pills field tested positive for MDPA. Exhibit 14 is a package of raw rolling papers found on a shelf in a kitchen cabinet.

15. On cross examination by defense counsel, Det. Dellacroce testified that Defendant was interviewed twice in Det. Dellacroce's presence. Both interviews were recorded. Det. Dellacroce also stated that he was present during a subsequent interview with Defendant's fiancé, who said the firearms were hers and were obtained from a friend. Det. Dellacroce testified that Firearm #2 was tested for fingerprints, and no fingerprints were found. He was uncertain whether it had been tested for DNA. Det. Dellacroce said his testimony that 120 grams of marijuana is a distribution amount was based on a number of factors, including the amount of marijuana, and the presence of baggies and a digital scale with marijuana residue on it. Dellacroce acknowledged, however, that the presence of rolling papers indicates personal use.

---------------

16. The last witness to testify for the government was ATF Special Agent Seth Christy. Agent Christy investigates violations of the federal statutes on firearms, explosives and arson. Agent Christy has been an ATF agent for approximately one year. Before that, he was a special agent with the Florida Division of Alcohol, Tobacco and Firearms. Prior to that, Agent Christy served as a sergeant in the U.S. Air Force Reserve.

17. Agent Christy testified that he was contacted on May 16th by PSLPD to assist with Defendant because the case involved firearms. When Agent Christy arrived, Defendant was handcuffed outside of the residence. Agent Christy and Det. Dellacroce interviewed Defendant. During Agent Christy's testimony, the government published Exhibit 28 which is an audio recording of a police interview of Defendant. This Court listened to the audio recording in open

court. At the beginning of the interview, agents offered Defendant an ATF Form waiving his <u>Miranda</u> rights. Defendant then stated that he lives at the residence with his fiancé and her two sons, and he shares the master bedroom with his fiancé. He said he bought the firearms for $200 each from a person named Sefton who obtained them from a pawn shop. He said he purchased one firearm in or around November, and the second firearm around March. He said both firearms were for his fiancé, who always kept the firearms "either in her drawer or under her bed." Soon after this statement, Defendant said his fiancé knows he may not have guns, she does not have them around him, and he is not supposed to know where she keeps them. When confronted by the fact that he clearly knew where she kept the guns, Defendant responded, "Yeah, last time I knew, yeah. I'm keeping it honest."

   18.  Defendant and Agent Christy then engage in the following discussion:

Officer:  Guns and everything, ever touch those before?

Defendant:  Yeah.

Officer:  Your fingerprints will be on them?

Defendant:  [Inaudible.] She don't know nothing about cleaning them, she don't know nothing about nothing. She just – I mean its times that I'm not here, and her and the kids are here. I never touched a bullet. Everything came as is.

Officer:  Well there's a magazine and bullet in your top left drawer.

Defendant:  Is it one or two?

Officer:  One magazine right next to your money.

Defendant:  Ok. Yeah. Alright.

Officer:  You knew about that?

Defendant:  Yes. I knew about that stuff there, but she knows…

At this point, Defendant's story about the firearms begins to change. He tells agents that his fiancé was actually the one who bought both guns from Sefton. Defendant said he called Sefton and said he needed to get a "clean" gun for his fiancé, Sefton came to Defendant's house to pick up the money, but Defendant's fiancé went by herself later and picked up the firearms.

19. Defendant told law enforcement that he took "full responsibility" for drugs in the house. He told them about the marijuana in the Tupperware in the bathroom, and identified the pills. He said his fiancé does not do drugs, and had nothing to do with any drugs in the home.

20. Agent Christy also testified that he contacted the State of Florida to determine if Defendant's right to bear firearms has ever been restored, which it has not. During Agent Christy's testimony, defense counsel stipulated that the firearms and ammunition recovered on May 16th traveled in interstate commerce.

21. On cross examination, defense counsel asked Agent Christy whether law enforcement had interviewed the person Defendant claimed he purchased the firearms from. Agent Christy testified that he had interviewed that individual whom Agent Christy referred to as Mr. Sarcoccio. According to Agent Christy, Mr. Sarcoccio stated that he sold Defendant a gun on two separate occasions. Each time, he went to Defendant's house, met with Defendant who paid him money for the firearm, and left the gun on the table. Agent Christy could not recall with Mr. Sarcoccio said Defendant's fiancé was there or not during these transactions.

----------------

22. The government rested its case.

----------------

23. The Defendant did not call any witnesses or present any evidence.

----------------

## ANALYSIS

24. This Court has considered all of the evidence submitted, being the sworn testimony and exhibits, as well as arguments of counsel. The standard of proof in violations of supervised release is by a preponderance of the evidence and not beyond a reasonable doubt. Revocation of supervised release is treated as part of the penalty phase for the initial offense involved. To constitute a violation, the conduct involved need not be criminal and the defendant need only be found culpable by a judge under a preponderance of the evidence standard. United States v. Cunningham, 607 F.3d 1264 (11th Cir. 2010).

25. Regarding Violation 1, the government has proved to this Court by a preponderance of the evidence that on April 21st Defendant had actual possession of five Hydromorphone pills, a digital scale, and less than 20 grams of marijuana. Detective McCarthy's testimony and Government Exhibits 1 and 2 are unrebutted in this regard. Defendant was driving a vehicle in which Hydromorphone pills, marijuana and a scale with marijuana residue on it were found; he was the only person in the car; these items were found in a readily accessible location in a backpack on the passenger seat next to him; the backpack contained male clothing in addition to drugs and the scale, and since Defendant was the only male in the car this is further indication that the backpack was his. When Defendant got out of the truck, Det. McCarthy saw a substance on the floorboard that field tested positive for marijuana, even though Defendant claimed it was incense. Det. McCarthy asked Defendant if he had a prescription for the Hydromorphone and Defendant simply said "No"; he did not deny ownership of the pills or backpack. Moreover, the digital scale in the backpack was manufactured by the same company (Judge) as the digital scale found in Defendant's garage.

These circumstances strongly suggest that the backpack and everything inside it belonged to Defendant. This Court finds that the government has met its burden with respect to Violation 1.

26. Violation 2 alleges Defendant failed to refrain from violation of the law on May 16, 2017 in six different ways: possession of a weapon by a convicted U.S. felon; possession of cannabis with intent to sell within 1000 feet of a place of worship; possession of more than 20 grams of cannabis; possession of synthetic, narcotic, opium of derivative with intent to sell or deliver within 1000 feet of a place of worship; use or possession of drug paraphernalia; and possession of new or legend drugs without a valid prescription. Proof of any one of these crimes by a preponderance of the evidence would meet the government's burden to establish that defendant violated a mandatory condition of supervised release by breaking the law.

27. The first state offense alleged in Violation 2 is that Defendant, having been convicted of a federal felony, possessed a weapon or ammunition. The Court takes judicial notice of Defendant's underlying charge of conviction. Defendant was convicted of a federal felony on October 29, 2004. The only question remaining is whether Defendant possessed a firearm on May 16th when his residence was searched. "The government need not prove actual possession in order to establish knowing possession; it need only show constructive possession through direct or circumstantial evidence." United States v. Beckles, 565 F.3d 832, 841 (11th Cir. 2009) (quoting United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006)). A defendant constructively possesses a firearm or ammunition if he (1) is aware of or knows of the firearm's or ammunition's presence and (2) has the ability and intent to exercise control over that firearm or ammunition. United States v. Perez, 661 F.3d 568, 576 (11th Cir. 2011) (per curiam).

28. The government has met its burden to establish by a preponderance of the evidence not only that Defendant knew of the presence of the firearms and ammunition in the

house, but also that he had the ability and intent to exercise control over these items as required to establish constructive possession. As to the first prong of the constructive possession test, the evidence is clear that Defendant knew about the presence of the firearms and ammunition. During the recorded interview, Defendant admitted having arranged the purchase of both firearms. He said he purchased the firearms for his fiancé from someone who could get "clean" firearms from a pawn shop since Defendant is not allowed in pawn shops (because he is a convicted felon). By his own admission, the firearms had been in Defendant's home for several months. Defendant told law enforcement exactly where at least one of the firearms could be found, stating that his fiancé kept the gun "in her dresser or under her bed." The evidence also suggests that Defendant knew where Firearm #2 was as well, since it was found in the closet of his master bedroom on top of men's shoe boxes and below male clothing, which are presumably his. These facts show Defendant was aware of the firearms and ammunition.

29. As to the second prong of the constructive possession analysis, the same facts support an inference that Defendant had the ability and intent to control the gun and ammunition. He knew there was a gun beneath the mattress he slept on, and could not fail to see the other gun when he walked in the closet with his clothes and shoes. Both guns contained ammunition, and there was also ammunition in a drawer in the dresser he claimed as his. Defendant told law enforcement in the recorded statement that he had touched the guns, although he claimed he never touched a bullet. Defendant also claimed during the interview that he had never cleaned the gun, while at the same time acknowledging that his fiancé does not "know nothing about cleaning them, she don't know nothing about nothing." Despite Defendant's denials, it is reasonable to infer that Defendant had previously exercised control over the seized firearm and maintained the ability to continue to do so.

30. The presence of marijuana, Ecstasy, MDMA, MDPA, and baggies throughout the house, and a digital scale with marijuana residue on it, is also relevant to proving that Defendant knowingly possessed firearms in the home in violation of state and federal law. Courts have noted a strong correlation between narcotics sales and the possession of firearms, and held that the presence of illegal drugs and paraphernalia is "inextricably intertwined" with possession of weapons found nearby. United States v. Thomas, 242 F.3d 1028 (11th Cir. 2001); United States v. Simon, 767 F.2d 524, 527 (8th Cir. 1989) (because of the known correlation between drug dealing and weapons, evidence of drugs and drug paraphernalia in the same room as firearms tends to prove the firearms are knowingly possessed).

31. This Court does not find Defendant's attempt to distance himself from the guns credible. He admitted that he bought the guns, he acknowledged that he knew where the guns were kept in the home, he acknowledged that the drawer where ammunition and pills were found belonged to him, and he acknowledged that had touched the guns before. That is more than sufficient evidence to establish that Defendant possessed the guns and ammunition by a preponderance of evidence standard.

32. The second offense alleged in Violation 2 is that Defendant possessed cannabis with intent to sell, deliver or manufacture, within 1000 feet of a place of worship. Det. Dellacroce testified, and Defendant did not rebut, that Defendant's residence is within 1000 feet of a church. Det. Dellacroce said he has seen parishioners going in and out of the church, and other PSLPD officers have worked security detail at the church. During his interview with law enforcement, Defendant admitted that any drugs in the house were his, and said he "took full responsibility" for marijuana and other illegal substances found in the home. Thus, the only question that remains is whether Defendant possessed the marijuana for personal use, or with

intent to sell or distribute it. The offense of possessing a controlled substance such as marijuana with the intent to sell it in violation of § 893.13(1)(e)(2), Fla. Stat., can be proven through circumstantial evidence. Such relevant circumstantial evidence can consist of the drug's quantity, accompanying equipment or paraphernalia, and the context in which the drugs were found. Also relevant is law enforcement opinion testimony that explains what circumstances are more typical of distribution and selling than mere personal use. Even if the quantity of the drugs is small, evidence such as the manner of packaging still may indicate the intent to sell that small quantity. This Court draws this general rule from Phillips v. State, 961 So.2d 1137 (Fla. 2nd DCA 2007), Barnes v. State, 838 So.2d 641 (Fla. 5th DCA 2003), Rawlings v. State, 979 So.2d 1238 (Fla. 4th DCA 2008), and Harris v. State, 72 So.3d 804 (Fla. 4th DCA 2011). Likewise federal law allows the use of those same kinds of circumstantial evidence to prove the equivalent federal offense of possession with intent to distribute in violation of 26 U.S.C. § 841(a)(1). See U.S. v. Gasper, 524 Fed.Appx. 514 (11th Cir. 2013), U.S. v. Bobadilla-Pagan, 747 F.3d 26 (1st Cir. 2014), and U.S. v. Perrier, 619 Fed.Appx. 792 (11th Cir. 2015). This Court finds sufficient circumstantial evidence here to find that the Defendant possessed the marijuana with the intent to sell it. Here the Defendant was found to possess 120 grams of marijuana. Det. Dellacroce testified that that quantity is more consistent with selling and far exceeds the quantity typical of mere personal use. It also far exceeds the 28.8 grams that law enforcement in the Rawlings case said was consistent with the intent to sell. It is closer to the quantities that law enforcement said in Bobadilla (210 grams) and Gasper (252 grams) was consistent with the intent to sell. Here the Defendant also was found to be in possession of paraphernalia and tools consisting of two digital scales (with marijuana residue on them) and numerous clear baggies. Det. Dellacroce testified that the presence of these scales and baggies is more consistent with selling drugs than personal use. The

presence of such baggies and scales was found to be compelling circumstantial evidence in the above cited cases, as well.

33. The third offense alleged in Violation 2 is that Defendant possessed more than 20 grams of cannabis in violation of Florida law. Detective Dellacroce testified that the marijuana found under the bathroom counter weighed 120 grams. The government has therefore met its burden as to this violation.

34. The fourth offense alleged in Violation 2 is that Defendant possessed a synthetic narcotic, opium or derivative with intent to sell, deliver, manufacture within 1000 feet of a place of worship. While a variety of pills were found in the home, including Ecstasy, MDMA, MDPA and sleeping pills, this Court did not hear any evidence that would prove distribution instead of personal use. Thus the government has not met its burden with respect to the fourth offense alleged in Violation 2.

35. The fifth offense alleged in Violation 2 is that defendant used or possessed drug paraphernalia in violation of state law. The evidence shows that on May 16th police found a Judge-brand digital scale in Defendant's home and, like the Judge-brand scale found in his truck on April 21st, the scale in his home had marijuana residue on it. Law enforcement also found numerous clear baggies throughout the home, and Det. Dellacroce testified that baggies of this sort are often used to distribute drugs. At § 893.145, Fla. Stat., Florida defines illegal "drug paraphernalia" broadly. It includes scales for weighing or measuring drugs, see § 893.145(5), Fla. Stat. and Grady v. State, 753 So.2d 744 (Fla. 3rd DCA 2000), and it includes baggies, see § 893.145(9) and (10) and State v. McCray, 561 So.2d 257 (Fla. 1990). This Court therefore finds the government has met its burden as to the fifth offense in Violation 2

36. The sixth offense alleged in Violation 2 is that Defendant possessed new or legend drugs without a valid prescription. The only evidence regarding drugs of this sort involved the two sleeping pills found in Defendant's nightstand. The testimony was limited, however, as to the type of sleeping pills involved or whether they required a prescription. As a result, this Court concludes that the government has not met its burden with respect to the sixth offense alleged in Violation 2.

37. Violation 3 is based on a federal complaint against Defendant charging felon in possession of a firearm or ammunition in violation of federal law. This violation is based on the same conduct underlying the second state offense in Violation 2, with the only difference being that in the federal case the government must also prove the weapon traveled in interstate commerce. At the final hearing, the parties stipulated that the firearms and ammunition involved traveled in interstate commerce. As a result, this Court's analysis of Violation 3 tracks its analysis of the first offense alleged in Violation 2 as set out previously at paragraphs 27 through 31. This Court therefore finds that the government has met its burden as to Violation 3.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to Violations 1, 2, and 3, except that with respect to Violation 2, this Court does not find that Defendant possessed a synthetic narcotic, opium or derivative with intent to sell, deliver, manufacture within 1000 feet of a place of worship, or possessed new legend drugs without a prescription in violation of state law.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal

Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this 18th day of August, 2017 at Fort Pierce, Northern Division of the Southern District of Florida.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

CC: Hon. Donald L. Graham
     Daniel Funk, AUSA
     Fletcher Peacock, AFPD
     U.S. Probation Office
     U.S. Marshal